**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA**

**UNITED STATES OF AMERICA,**
    **PLAINTIFF,**

                                            **CASE NO. 05-cr-300-MHT**

**v.**

**LEEANDORA WOODS,**
    **DEFENDANT.**

## MOTION TO SUPPRESS

Comes now the defendant, Leeandora Woods, and moves to suppress the evidence obtained from the search of the vehicle and his statement made on November 1, 2005, and states the following:

### Facts

On November 1, 2005 Scott Edwards, HIDTA Task Force Officer, received information from Detective Robert Stillman and Special Agent Neil Thompson that a confidential source stated Preston Grice was storing and distributing a large quantity of cocaine from an address on Holcombe Street. (H-7)[1]

Surveillance of the residence was set up. Agents observed a black Cadillac believed to be driven by Lee Woods in the driveway. Woods was purportedly seen

---

[1] The Preliminary and Detention Hearing transcript will be cited as (H-__) indicating hearing and page number.

leaving the house with something in his hand. Detective Stillman and other agents asked for Woods or the Cadillac to be stopped. Woods was stopped by a patrol unit. The officer told Woods he was being stopped for a tint violation.

The officer had his video camera and microphone on during the entire stop and search. Mr. Woods was told to exit the vehicle at which time he was searched, including pockets of his clothing.

After Woods was out of the car, he and the officer discussed his not having his drivers license. He gave the officer his name and social security number. The officer went to his patrol car to run Woods name and social security number.

While awaiting the results the officer asked if he could search Woods car. Woods consented and told the officer the car was his mother's. The officer searched the interior of the car and the trunk. The officer found nothing. In fact the officer is heard on the tape telling another that he is about to "cut him loose".

During this time period another uniformed officer arrived as did an officer in plain clothes with a canine. The dog was brought in and it sniffed the trunk area. The dog jumps out and in again. The dog did not alert. Then the dog was taken to inspect the passenger compartment of the car. You cannot tell from the video whether the dog alerted inside the car. One only sees the dog and his handler go back and forth from Woods car to an area in front of the car(we assume the canine

patrol unit).

Woods was cooperative at all times. Woods never acted nervous. Woods did eventually attempt to run. He was caught, tazed, handcuffed, and placed in the patrol car.

At no time was his window tint ever tested for the alleged violation. On the video tape provided to counsel you can hear the patrol officer tell the Captain that he does not know what the law is on a tint violation. In turn the reply by the Captain is that you need a meter. Later the officer stated that someone had better get a meter over here if they don't want to lose this case. A citation for a tint violation was never issued.

Scott Edwards admits Woods was stopped as relates to a drug investigation not really a traffic stop. (H-31) He states that the pretext of the window tint stop was not true. (H-31) The patrol officer was told to make a pretexual traffic stop for purposes of a drug investigation. (H-32)

**Argument**

Woods alleges that the search of the vehicle on November 1, 2005 was illegal and that any evidence found in the vehicle was illegally seized and should be suppressed. Furthermore, due to the illegal search and seizure any statement he

gave should be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitutes a seizure within the meaning of those Amendments. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). A traffic stop is a seizure within the meaning of the Fourth Amendment. A routine traffic stop is only a limited form of seizure, it is more analogous to an investigative detention than a custodial arrest. *United States. v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001), cert. denied, 534 U. S. 830, 122 S. Ct. 73, 151 L. Ed. 2d 38 (2001).

**The Alleged Window Tint Violation Was Merely a Pretext and Illegal as a Matter of Law**

Woods contends that the stop by Montgomery Police Department allegedly due to a window tint ordinance violation was simply pretextual and illegal as a matter of law.

A suspicion based on such a mistaken view of the law cannot be reasonable suspicion required for the Fourth Amendment, because the legal justification for a traffic stop must be objectively grounded. In other words, if an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment.

*United States. v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000)

This circuit has consistently held that once an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation (i.e., a ticket), the officer's continuing detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999), reh'g and reh'g en banc denied, 192 F.3d 132 (11th Cir. 1999).

The traffic stop was pretextual. But under *Whren v. United States*, a traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has probable cause to believe that a traffic violation has occurred. This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop. On the other hand, if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no objective basis for the stop, and the stop is illegal. *United States v. Escalante*, 239 F.3d 678, 680-81 (5th Cir. 2001).

The officer stopped Woods for a car tint violation. The car window tint was never tested and as set out in the factual portion the officer did not know the law on window tint law and did not possess a meter to test the window. The officer

conducted a thorough search of the vehicle, and was about to release Woods when officer Conway arrived with the canine. Woods was detained too long for a simple window tint violation.

**Pat down of Woods Was Unreasonably Intrusive**

The pat-down seeking concealed weapons must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry v. Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 20 L. Ed 889 (1968).

Once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6, 98 S. Ct. 330, 54 L. Ed.2d 331 (1977).

The video tape of the stop reveals the officer directing Woods to exit the vehicle and immediately began an intrusive search of his person even searching the inside of his clothing pockets.

**Detention of Woods Was Unreasonable and in Violation of Fourth Amendment**

The Supreme Court in *Berkemer v. McCarthy*, 468 U.S. 420, 439-440, 82

L.Ed.2d 317, 104 S.Ct. 3138 (1984) held that the analogue of the common traffic stop was the limited detention for investigation authorized by *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed.2d 889, 88 S.Ct. 1868 (1968).  While *Terry* authorized a restricted incidental search for weapons when reasonable suspicion warrants such a safety measure.  The Court took care to keep a *Terry* stop from automatically becoming a foot in the door for all investigatory purposes; the permission intrusion was bounded by the justification for the detention.  Although facts disclosed by inquiry within this limit might give grounds to go further, the government could not otherwise take advantage of a suspect's immobility to search for evidence unrelated to the reason for the detention.  That has to be the rule unless *Terry* is going to become an open-sesame for general searches, and that rule requires holding that the police do not have reasonable grounds to conduct sniff searches for drugs simply because they have stopped someone to receive a ticket for a highway offense.  Since the police had no indication of illegal activity beyond the [speed] of the car in this case, the sniff search should be held unreasonable under the Fourth Amendment and its fruits should be suppressed.  *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).

**Woods Statement Should Be Suppressed**

The exclusionary rule also prohibits the introduction of derivation evidence,

both tangible and testimonial, that is the produce of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search. *Murray v. United States*, 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L. Ed. 2d 472 (1988).

The Government cannot violate the Fourth Amendment-in the only way in which the Government can do anything; namely through its agents-and use the fruits of such unlawful conduct to secure a conviction. Nor can the Government make indirect use of such evidence for its case, or support a conviction on evidence obtained through leads from unlawful obtained evidence. All these methods are outlawed, and convictions obtained by means of them are invalidated, because they encourage the kind of society that is obnoxious to free men." *Walder v. U.S.* 347 U.S. 62, 64-65, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

Respectfully submitted,

        s/Susan G. James
        SUSAN G. JAMES
        Attorney at Law
        600 South McDonough Street
        Montgomery, Alabama 36104
        Phone: (334) 269-3330
        Fax: (334) 834-0353
        E-mail: sgjamesandassoc@aol.com
        Bar No: JAM012

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Susan G. Redmond
United States Attorney
P.O. Box 197
Montgomery, Alabama, 36101

Respectfully submitted,

s/Susan G. James
SUSAN G. JAMES
Attorney at Law
600 South McDonough Street
Montgomery, Alabama 36104
Phone: (334) 269-3330
Fax: (334) 834-0353
E-mail: sgjamesandassoc@aol.com
Bar No: JAM012