**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA**

**UNITED STATES OF AMERICA,**
 **PLAINTIFF,**

                CASE NO.  05-cr-300-MHT

**v.**

**LEEANDORA WOODS,**
 **DEFENDANT.**

### SUPPLEMENT TO MOTION TO SUPPRESS

Comes now the defendant, Leeandora Woods by and through undersigned counsel and files this his supplement to his Motion to Suppress which was timely filed on May 12, 2006  and in support thereof states the following:

### INTRODUCTION

1. Woods caused to be filed a motion to suppress evidence and statement on May 12, 2006.  Subsequent to the filing and after further review of the discovery, the undersigned deemed it necessary to supplement the motion to suppress so that the government and the Court may have a full understanding of the argument and evidence Woods plans to present at the suppression hearing which is now scheduled for June 20, 2006.  The supplement is being filed with leave of court.

2. A DEA Form 6 reveals that on  November 1, 2005 police Detective Robert Steelman and DEA Special Agent Neill Thompson received information

from a confidential source[1] that Preston Grice was in possession of a large quantity of cocaine and that he was storing the cocaine at a residence on Holcombe Street. The source purportedly identified vehicles being driven by other individuals by the names of Corey Harvey and Lee Woods.

    3. On that day the police set up surveillance of the residence and noticed a black Cadillac purportedly meeting the description of Woods vehicle in the drive way. During the course of surveillance, approximately 15 minutes later at 12:35 Steelman observed an individual later identified as Leeandora Woods enter the vehicle and depart. Purportedly through binoculars Steelman was able to observe Woods exit the residence carrying an unknown object, "possibly a plastic bag". A request for a patrol unit to stop the vehicle was issued by Sgt. Mike Drummond. Montgomery uniformed police officer Cpl. Mills made a traffic stop of the vehicle at Westgate Street. He told Woods he was being stopped for a tint violation. Yet, it was later revealed on the video tape that he did not know if a tint violation existed, had no means to check, and did not write a citation. Woods was detained and later arrested.

---

[1] It was later learned that the "source" had been told this information by a "close friend".

4. On that same day Detective Steelman was granted a search warrant by W. Troy Massey, Montgomery Municipal Court Judge. A warrant was executed at the targeted residence on Holcombe Street. Contraband including a large quantity of controlled substance was found in the residence. As part of the search effort Grice and Harvey were arrested.

5. Subsequently, Corey Harvey, Preston Grice and Leeandora Woods were indicted in November 2005.

6. On November 7, 2005 a preliminary and detention hearing was conducted in the above referenced case.

7. At the preliminary detention hearing it was actually **revealed that the tip information had come through a confidential source who had heard the information** from someone else. Specifically, on cross examination Scott Edwards was asked the question:

Q. "Now is that, and without telling me, I'm not interested in necessarily who that person was, but I mean this person, did they indicate to you that they had seen drugs there that day, or that they had just had some information or how did that come about?

A. I believe the way it was told to me, Detective Steelman and Agent Thompson that the CS had heard that Mr. Grice, through a close friend, that they

had drugs stored there and that he was still selling the drugs from that residence." (PH-26-27)[2]

8. Woods argues that but for the unreliable hearsay tip to police by a confidential source from a "close friend" there would have been no pretexual stop ultimately resulting in his arrest.

9. The Government will be heard to argue that Woods has no standing to challenge the search, that the search and seized drugs from Holcombe Street are not part of this case, and that testimony regarding the tip is not relevant for purposes of the suppression hearing. Woods argues the contrary. Absent the unreliable tip, surveillance would not have been set up, Woods would not have been stopped, a search would not have been conducted, drugs would not have been seized, and Woods would not have been arrested. The tip, search, and Woods arrest are so inextricably intertwined these matters must be addressed as part of this suppression hearing.

**THE TIP MERELY CREATED A REASONABLE SUSPICION**

10. The sworn affidavit of Cpl. R. J. Steelman dated November 1, 2005 and presented to the Honorable Troy Massey regarding the tip stated:

---

[2]The preliminary hearing transcript will be cited as (PH-___) indicating preliminary hearing and page number.

4

"Probable cause being that on November 1, 2005 at approximately 11:45 hours, the Montgomery Police Department Narcotic's Bureau received an anonymous source that a trafficking amount of cocaine was being stored at a residence with no visible numbers located in the 500 block of Holcombe Street, Montgomery, Alabama."  (Exhibit A)

11. To the contrary the testimony of Scott Edwards, as noted at the preliminary hearing, was that the tip was from a confidential source based on information from a "close friend".  (PH-26-27)

12. In determining whether an informant's tip rises to the level of probable cause, we assess the totality of the circumstances.  *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir 1992)   The Court considers the relevance of factors such as the informants veracity, reliability, and basis of knowledge.  *Gonzalez*, 969 F.2d at 1003 citing *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed. 2d 527 (1983).

13. Despite the anticipated testimony of law enforcement that the confidential source was reliable and there was a history between the informant and the officer, there is no way the same can be established regarding the "close friend" of the confidential source that actually provided the tip information.

14. Personal observation and hearsay problems associated with tips was

addressed by the Fifth Circuit in *United States v. Cisneros-Mireles*, 739 F.2d 1000 (1984) "an informants tip is buttressed through the fact that it is **based on his own personal observation rather than hearsay**." (emphasis added)

15.  The affidavit in support of the Federal arrest warrant prepared by Scott Edwards is contradicted by his testimony at the preliminary hearing on November 7, 2005 and Steelman's affidavit in support of the search warrant.  In the affidavit Edwards attests to the following:

"On November 1, 2005, Montgomery, Alabama Police Detective Robert Steelman and DEA SA Neill Thompson received information from a confidential source (CS)."   (Exhibit B)

16. The affidavit omits a critical fact that the CS tip was based on hearsay from a "close friend."    It is axiomatic that a tipsters reliability is not imputed to another person or in this case a "close friend."

17.  The Government filed a motion to dismiss the indictments against Grice, Harvey, and Woods.  The motion was granted December 9, 2005

18.  The affidavit for search warrant states the tip was anonymous.  The testimony of case agent Scott Edwards contradicted this because Edwards said the information came from a confidential source based on information from a "close friend".  Regardless of which representation is correct the scenario is troubling.

Grice and Harvey were likely dismissed because of an anticipated *Frank v. Delaware* problem.

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978).

## THE ARREST

19. Additionally, during the pretextual traffic stop of Woods, he was confronted by Patrol Officer Mills on the pretense of a tint violation. Woods gave verbal consent to Mills to search his vehicle. Mills searched the vehicle thoroughly as evidenced in a video tape that will offered into evidence at the suppression hearing. Mills found nothing in the vehicle and even states on the video tape that he found nothing and stated he was going to have to let him go.[3] The search that was consented to was complete.

20. All the while they were waiting for Special Agent Conway to arrive with

---

[3] Woods was clearly in custody. Prior to finding drugs in the vehicle, Woods attempted to leave the scene. Evidence of his in custody status was that he was tazed and immobilized by a uniformed Montgomery Police Officer.

his drug sniffing dog "Luke". Woods contends that he was illegally detained and should have been free to go after Mills found nothing in his vehicle. The purported routine traffic stop had been effected at that point. No violation was actually known to law enforcement, no citation issued, and the thorough search of the vehicle by Mills revealed nothing illegal. Woods contends that the interrogation and search should have ended at that point and he should have been free to go. The delay in waiting for the drug dog was violative of his constitutional rights and he should have been permitted to leave.

21. A search without a warrant based on probable cause is illegal, unless the Government can show that it falls into one of those limited exceptions recognized by law. One of the exceptions deals with the search of automobiles. Searches of automobiles may be conducted without a warrant if 1) there is probable cause to believe the vehicle contains contraband or other evidence which is subject to seizure under the law, and (2) exigent circumstances necessitate a search or seizure.

22. The Supreme Court has emphasized that before a Government agent can search a vehicle without a warrant "the overriding standard of probable cause" must be met. *United States v. Campbell,* 920 F.2d 793 (11th cir. 1991) citing *United States v. Alexander*, 835 F.2d 1406 (11th Cir. 1988).

23. In order to find probable cause at the time of the initial search and

ultimate arrest of defendant, one must look at the reliability of the informant. Here law enforcement has offered little evidence to show the past reliability of the **confidential informant** or the anonymous source**.** Furthermore, there was no independent information corroborating the informant's tip prior to stopping Woods'car. The officers merely had reasonable suspicion to conduct a investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed 2d 889 (1968); see also *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed. 2d 301 (1990). As in *Campbell*, *supra* any detention due to exigent circumstances ceased to exist after Mills searched Woods' and the vehicle. The most the police could have had was "a reasonable suspicion" that Woods was carrying drugs.

24. The Eleventh Circuit has consistently held that once an officer has briefly stopped a motor vehicle operator or the purpose of issuing a traffic violation (i.e., a ticket), the officer's continuing detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *U. S. v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999), reh'g and reh'g en banc denied, 192 F.3d 132 (11th Cir. 1999).

25. Finally, there remains the question of whether the consent given by Woods to Mills (only) cured the illegal arrest. The drugs must be suppressed as

fruit of an illegal arrest unless Woods' consent to search was "both (1) voluntary, and (2) not the produce of the illegal detention." The factors to be considered in resolving this issue are "(a) the temporal proximity of the arrest and the consent to search, (b) intervening circumstances and (c) the purpose and flagrancy of the official misconduct." *Campbell*, *supra*.

26. Here Woods detention was illegal. There were no intervening circumstances and the stop was unlawful as there was no window tint violation.

## DOGS FAILURE TO ALERT

27. As will be obvious to the Court after a review of the video tape of the traffic stop, Special Agent Conway arrived on the scene with his dog Luke. Luke is taken in and out of the vehicle several times and it is Woods' contention that the dog did not alert to any controlled substance within the vehicle. Given the fact that the dog did not alert, Woods contends that the further intrusive search of the console was in violation of his constitutional rights.

## CONCLUSION

28. Given that Woods was stopped and searched as a result of the hearsay tip from a close friend to a confidential source, then provided to Detective Steelman and Agent Thompson, Woods contends that the evidence in the case seized from the vehicle in which he was traveling should be suppressed. Further he argues any

subsequent statement that he made should also be suppressed all under the fruit of the poisonous tree doctrine.

29. Based on the arguments raised in the previous motion to suppress as well as the supplement, Woods contends that the drug evidence and the statement should be suppressed.

Respectfully submitted,

>s/Susan G. James
>SUSAN G. JAMES
>Attorney at Law
>600 South McDonough Street
>Montgomery, Alabama 36104
>Phone: (334) 269-3330
>Fax: (334) 834-0353
>E-mail: sgjamesandassoc@aol.com
>Bar No: JAM012

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Susan G. Redmond
United States Attorney
P.O. Box 197
Montgomery, Alabama, 36101

>Respectfully submitted,

>s/Susan G. James

SUSAN G. JAMES
Attorney at Law
600 South McDonough Street
Montgomery, Alabama 36104
Phone: (334) 269-3330
Fax: (334) 834-0353
E-mail: sgjamesandassoc@aol.com
Bar No: JAM012