**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No.:   2:05-CR-300-MHT** |
| | ) | |
| **LEEANDORA WOODS** | ) | |

**RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

**COMES NOW** the United States of America, by and through Leura Garrett Canary, United States Attorney for the Middle District of Alabama, and files its response to Defendant's Motion to Suppress and Supplemental Motion to Suppress, filed on or about May 12 and May 17, 2006, respectively, as follows:

1.      Defendant moves to suppress evidence obtained as the products of a search and seizure of a vehicle, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and any statements made as a result thereof.

2.      The gist of Defendant's argument is that the stop of the vehicle was pretextual based on an unreliable tip based on hearsay information and thus illegal.

**FACTS**

3.      On or about November 1, 2005, Detective Robert Stillman of the Montgomery Police Department (MPD) and Special Agent Neil Thompson of the Drug Enforcement Agency (DEA) informed Scott Edwards fo the High Intensity Drug Task Force (HIDTA) and MPD that they had received information from a confidential source (CS) that Preston Grice (Grice), who drove a black truck, was storing and distributing a large quantity of cocaine from an address on Holcombe Street, later identified as 589 Holcombe Street. The CS also stated that a person known as Corey (later identified as Corey Harvey), who

drove a yellow Caprice was also distributing cocaine from that residence. The CS further stated that "Bunky" later identified as Leeandora Woods (Woods) was at the residence, drove a black Cadillac and was involved in the distribution of cocaine from the residence.

4.      Armed with the information, and after running a search through law enforcement databases and determining that Grice had prior convictions for trafficking in narcotics and Detective Steelman verifying the physical descriptions given by the CS, officers set up surveillance at the residence and observed Woods' black Cadillac in the driveway, and Grice's black truck parked on the street in front of the house. Officers watched Woods walking out of the house carrying an object (possibly a plastic bag), enter the black Cadillac, place his foot on the brake for a period of time and then leave.

5.      Sergeant Mike Drummond (Drummond) of MPD observed the black Cadillac as it passed him at the intersection of South and Holcombe Streets. Based on his observation, Drummond believed that the window tint on the vehicle was too dark and that the vehicle was moving at a high rate of speed. Drummond then radioed in for a patrol unit to stop the vehicle. Corporal C. Mills (Mills) answered the call and stopped the black Cadillac in the 2400 block of Lark Street. Mills told the driver that he was stopped for a requested the driver provide his driver's license and proof of insurance. The driver (Woods) advised that his driver's license was suspended. Mills asked the driver to exit the vehicle and conducted a pat down for officer's safety. Mills obtained Woods' personal information and radioed in to begin a warrant and "wanted" check on him. While waiting for a return of information Mills asked Woods if any weapons in the vehicle and Woods told Mills that he could search the vehicle. Mills then began a search of the car and was later joined by a K-9 team consisting of MPD Detective Tommy Conway (Conway) and "Luke". "Luke", while in

the vehicle, alerted to the presence of narcotics in the area of the Cadillac's center console. "Luke" was secured and Conway returned to the vehicle, turned the ignition switch, placed his foot on the brake and placed the vehicle in neutral. Woods then fled the area, was tazered, secured and placed in custody. Conway lifted the center console and retrieved a plastic bag containing approximately 454 grams of cocaine base (crack), a clear plastic bag with 140 grams cocaine powder and from underneath the console a clear plastic bag with 25 grams of marijuana. Mills then receives a radio transmission supplying him with the information on Woods requested earlier. Woods was transported to the Special Operations Division of MPD where he refused to make a statement to officers but did say words to the effect that he had done the crime and would have to do the time.

## DISCUSSION

6.      The task of the magistrate issuing a warrant is simply to make a practical, common sense decision of whether, given all the circumstances set forth in the affidavit before him, including the veracity and knowledge of persons supplying hearsay information there exists a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213 (1983); United States v. Brundidge, 170 F.3d 1350 (11th Cir. 1999); United States v. Foree, 43 F.3d 1572 (11th Cir. 1995).

7.      A court reviewing the issuance of a search warrant by a magistrate or state court judge is to decide whether the evidence viewed as a whole provided a "substantial basis" for the finding of probable cause at the time the warrant was issued, Massachusetts v. Upton, 466 U.S. 727, 732-33 (1984) (per curiam); Illinois v. Gates, 462 U.S. 213, 236 (1983). The reviewing court must decide whether there was a "substantial basis" solely upon consideration of the information presented to the issuing judicial officer. United States

v. Lockett, 674 F.2d 843 (11th Cir. 1982). In conducting such a review, the court must give deference to the decision of the issuing judge even in marginal or doubtful cases. Id. at 845.

8.      In this case there is no warrant issue regarding the seizure and search of Woods' vehicle therefore Woods' argument that the information provided by the CS was unreliable is nonsensical. The CS provided information. Steelman verified the information. Surveillance was established that lead to officers forming a reasonable suspicion that criminal activity was occurring at the residence and that Woods was involved in the commission of the criminal activity. Indeed, Woods at page 4 of his Supplemental Motion seems to concede that officers had a reasonable suspicion. Based on personal observations as well as information gathered from other law enforcement sources, a stop of Woods' car was performed.

9.      Whren v. United States, 517 U.S. 806 (1996) established that the detention of a motorist is reasonable where probable cause exists to believe that a traffic violation has occurred. The fact that the police may be motivated to stop the vehicle which has committed a violation, because of a suspicion that the occupants have committed some other offense, is not a basis for invalidating the initial stop.

10.     In the present case, Drummond and Mills both believed that a violation had occurred that Woods was speeding and that the tint of the automobile was darker than permitted. Therefore, the fact that officers may have had another reason for stopping the car is not salient to the question of whether the stop was legal.

11.      Woods argues that the search he consented to was over when Mills returns from his inspection of the vehicle. The videotape of the incident is clear that the consent

to search the vehicle was never retracted. Woods watched as Conway and "Luke" engaged in a search of the vehicle. At no point did Woods, who was not bound or contained in any way, ever instruct officers to stop or to not place the animal in the vehicle.  When an individual gives a general statement of consent without express limitations, the scope of a permissible  search is not limitless. Rather, it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass.  United States v. Harris, 928 F.2d 1113 (11th Cir. 1991)

12.    Finally, Woods argues that after Mills completed his search, Woods should have been free to go as the routine traffic stop had been effected at that point. The videotape is clear that the information requested by Mills at the beginning of the stop was not produced until after the drug evidence had been located. Therefore, the stop had not been effected until after Woods attempted to flee and after the illegal drugs were located.

13.    Based on the foregoing, the United States respectfully requests this Court deny Defendant's Motion to Suppress.

Respectfully submitted, this 31st day of May, 2006.

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334.223-7280
334.223.7135   fax
susan.redmond@usdoj.gov

**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No.:   2:05-CR-300-MHT** |
| | ) | |
| **LEEANDORA WOODS** | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to

the following: Susan G. James.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334.223-7280
334.223.7135   fax
susan.redmond@usdoj.gov