**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | NO 2:05-CR-300-MHT |
| | ) | |
| **LEENANDORA WOODS** | ) | |

**GOVERNMENT'S OBJECTION TO THE
RECOMMENDATIONS OF THE MAGISTRATE JUDGE**

**COMES NOW** the United States of America, by and through Leura Garrett Canary, United States Attorney for the Middle District of Alabama, and respectfully files the Government's Objection to the Recommendations of the Magistrate Judge to suppress evidence and statements in the above-styled cause, and as grounds states as follows:

**I.     PROCEDURAL BACKGROUND**

On or about December 14, 2005, a Grand Jury, sitting in the Middle District of Alabama, returned a two-count Indictment against Leenandora Woods (Woods). Woods was charged with knowingly and intentionally distributing and possessing with intent to distribute 50 grams or more of cocaine base, commonly known an "crack", a Schedule II Controlled Substance, and a mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); and knowingly and intentionally possessing marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 844, all taking place on November 1, 2005, in Montgomery County, within the Middle District of Alabama. On May 12, 2006, Woods filed a Motion to Suppress (Doc. 20). On May 31, 2006, Woods filed a Supplement to Motion to Suppress (Doc. 26).The Government filed its response to the motions on May 31, 2006 (Doc. 29). A suppression hearing was held

before United States Magistrate Judge Vanzetta Penn McPherson on June 20 and 26, 2006. On July 19, 2006, the *Recommendation of the Magistrate Judge* was filed.(Doc. 43) The Magistrate Judge recommends the following: that the <u>Motion to Suppress</u> be granted and that all of the government's evidence against Woods be suppressed because, "...the alleged tint violation cannot be relied upon to justify the stop." and, "...the police lacked reasonable suspicion that Woods was involved in criminal drug activity when Mills stopped him." (Recommendation of the Magistrate Judge. p. 14 and 23).

## II.   FACTUAL BACKGROUND

On November 1, 2005, Detective Robert Stillman (Stillman) of the Montgomery Police Department (MPD) and Special Agent Neil Thompson of the Drug Enforcement Agency (DEA) received information from a confidential source (CS) that Preston Grice (Grice), who drove a black truck, a person known as Corey (later identified as Corey Harvey), who drove a yellow Caprice, and "Bunky" later identified as Leenandora Woods (Woods) were at 589 Holcombe Street, known to law enforcement as a location from which narcotics were distributed, and that a large amount of cocaine was being stored and distributed from the residence.(TR1 - 6,7,8; TR2 - 10,35.) Armed with the information, and after running a search through law enforcement databases and determining that Grice had prior convictions for trafficking in narcotics, Stillman, within 30 minutes of receiving the CS's information, set up surveillance at the residence and observed Woods' black Cadillac in the driveway, and Grice's black truck parked on the street in front of the house.(TR2 - 9, 10, 11, 12.) Stillman observed a person he knew to be a drug dealer standing with another male (later identified as Harvey) who was walking back and forth from 589 Holcombe Street to vehicles which were stopping in the street.(TR2 - 13, 25.) Stillman also

2

observed a man with dread locked hair walk out of 589 Holcombe Street carrying plastic bags, enter the black Cadillac, place his foot on the brake for a period of time and then leave.(TR1 - 10,11; TR2 - 12.) Sergeant Mike Drummond (Drummond) a first shift supervisor for MPD, aware of the information received from the CS, of the activities of the two males on Holcombe Street, of the dread locked male with the bags exiting the area in a car, his own training and experience regarding the rapid nature of drug distribution and at Stillman's request, radioed in for a patrol unit to stop the vehicle.(TR1 - 10,11,12,30; TR2 - 26,27,28,29.) Corporal C. Mills (Mills) answered the call.(TR1 - 12,13.) Drummond told Mills that they wanted to get the Cadillac stopped, and that they were possibly carrying drugs.(TR1 - 13.) Mills stopped the black Cadillac in the 2400 block of Lark Street.(TR1 - 13.) Mills told the driver that he was stopped for a "tint violation" and requested the driver provide his driver's license and proof of insurance.(TR1 - 43.) The driver (Woods) advised that his driver's license was suspended.(TR1- 43.) Mills obtained Woods' personal information and radioed in to begin a warrant and "wanted" check on him.(TR1 - 43, 44,78.) While waiting for a return of information Woods gave consent to search the vehicle.(TR1 - 43,44,45.) Mills then began a search of the car and was later joined by a K-9 team consisting of MPD Detective Tommy Conway (Conway) and "Luke". "Luke", while in the vehicle, alerted to the presence of narcotics in the area of the Cadillac's center console. "Luke" was secured and Conway returned to the vehicle, turned the ignition switch, placed his foot on the brake and placed the vehicle in neutral. Woods then fled the area, was tazered, secured and placed in custody. Conway lifted the center console and retrieved a plastic bag containing approximately 454 grams of cocaine base (crack), a clear plastic bag with 140 grams cocaine powder and from underneath the console a clear plastic bag with

25 grams of marijuana.(TR1- 14,15,16,25,31,45.) Mills then received a radio transmission supplying him with the information on Woods requested earlier which established that Woods did have a suspended license, and three outstanding warrants.(TR1 - 45,79,81.) Woods was transported to the Special Operations Division of MPD where he received notification of his rights, indicated his understanding of those rights, waived them and told officers of the drugs located in the Cadillac that, "You've got them all." and "I did the crime, I'll do the time."(TR2- 29,30.)

### III.   DISCUSSION

####   A.   The Lawfulness of the Traffic Stop

#####     1.   General Governing Principles.

The government has no objections to the legal analysis conducted by the Magistrate as to the question of whether the decision to conduct an automobile stop may be conducted where the police have probable cause to believe that a traffic violation has occurred.(Rec. 2-3.)

#####     2.   Tint Violation

######       a.   Relevant facts

The government has no objections to the findings of fact presented by the Magistrate.(Rec. 4-5.)

######       b.   The Law Regulating Vehicular Window Tint

The government has no objections to the Magistrate's legal analysis as to the State of Alabama's laws relating to window tint nor to the Magistrate's conclusion that Mills was not authorized to stop Woods for a violation of the tint law.(Rec. 5-7.)

######       c.   The Significance of Mill's Error

The government has no objection to the analysis of, nor conclusion of law reached by the Magistrate that the tint violation cannot be relied upon to justify the stop. The government does object to the characterization of the tint violation as "alleged".(Rec.7-14.)

    3.    Reasonable Suspicion that Woods was Transporting Controlled Substances

        a.    Information Provided by the Source

The government has no objections to the findings of fact as presented by the Magistrate.(Rec. 15-17.) The government does, however, wish to clarify that the CS did not provide to law enforcement the surname of "Corey", the proper name of "Bunky", nor a physical description of either Preston Grice, Corey or Bunky.(Rec. 17.)

        b.    Corroboration

The government does not object to the Magistrate's analytical framework relating to the information provided by the CS. The government concedes that it is proper to consider the information provided by the CS tantamount to an anonymous tip. To date, the government is unaware as to who the person is who provided the information to the CS, how the person came to be in possession of said information, or the reliability of the person.(Rec. 18.)

The government cannot agree, however, with the facts set out by the Magistrate and used to negate the officer's reasonable suspicion. (Rec. 18-22.)

It is clear from a reading of the hearing transcript, and as set out at the beginning of the government's objections, that what was known to law enforcement at the time that Stillman and Drummond ordered the stop of the black Cadillac was that: 1. three individuals, one of whom had at least one prior conviction for a narcotics offense, were storing and distributing large amounts of cocaine; 2. the cocaine was being stored and

5

distributed from 589 Holcombe Street; 3. the three individuals drove a black truck, a yellow Caprice and a black Cadillac, respectively; 4. all three described vehicles were at the residence; 5. a known drug dealer was standing across the street from the residence with another male, who was walking from the residence to the street and back , approaching cars which were coming down the street and stopping; 6. a lone male, carrying what appeared to be plastic bags, left 589 Holcombe Street, entered the black Cadillac and, after some time, left the area; 7. 589 Holcombe Street was known as a point of distribution for narcotics.[1]

The Magistrate bases her contention that reasonable suspicion was not present apparently only on the anonymous tip and a mistaken fact pattern. The government asserts that the anonymous tip, coupled with the knowledge of Holcombe Street as a point of narcotics distribution, activity observed when Stillman within 30 minutes of receiving the information, i.e., the activities of the person walking from the house to the street and back, the appearance of the lone male carrying a plastic bag(s) to the black Cadillac combined with the training and experience of the law enforcement officers present provided sufficient and justifiable reasonable suspicion to support the investigative stop of the black Cadillac.

    c.    Reasonable Suspicion

It is acceptable under the Fourth Amendment for the police to stop persons and

---

[1] The Magistrate Judge at footnotes 11 - 13 of the Recommendation makes findings of fact that are inconsistent with the testimony of Detective Edwards and Sergeant Drummond and conclusory in nature. Specifically, both officers testified that Stillman and others believed they had seen Woods carrying what appeared to be a plastic bag or bags, a statement which patterns an answer given by Edwards at the preliminary hearing held on November 7, 2005 at p.30. Both testified that the Holcombe Street address was known to be a point of distribution of narcotics and both testified referencing what they had been told by Stillman.

detain them briefly in order to investigate a reasonable suspicion that the persons have engaged in or are about to engage in criminal activity. Terry v. Ohio, 392 U.S. 1 (1968); Illinois v. Wardlow, 120 S. Ct. 673 (2000). The key is reasonable suspicion on the part of the police officer. "Reasonable suspicion" is more than just a hunch because the Fourth Amendment requires at a minimum some objective justification for the investigatory stop. United States v. Sokolow, 490 U.S. 1 (1989); United States v. Dunn, 345 F.3d 1285 (11th Cir. 2003). The police must have a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if they lack probable cause under the Fourth Amendment. Reasonable suspicion entails some minimal level of objective justification for making a stop-that is, something more than an inchoate and unparticularized suspicion or "hunch," but less that the level of suspicion required for probable cause. Sokolow, at 1585 citing Terry. The validity of the stop must be considered in view of the totality of the circumstances. None of the suspect's actions need be criminal on their face, yet taken together they can provide trained police with reasonable suspicion. United States v. Arvizu, 122 S. Ct. 744 (2002); United States v. Lee, 68 F.3d 1267 (11th Cir. 1995). The reviewing court views the circumstances in the light of the officer's special training and experience. United States v. Smith, 201 F.3d 1317 (11th Cir. 2000). Reasonable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence or even the requirement of probable cause that evidence of a crime will be found. United States v. Mikell, supra; United States v. Tapia, 912 F.2d 1367 (11th Cir. 1990).

In the present case, officers had an anonymous tip that drugs were being stored and distributed out of a certain location by three individuals. Officers had a duty to "check out" the information and did so by establishing surveillance of the location. Officers, through

their surveillance, corroborated the information supplied as to the vehicles the three individuals were driving. Officers confirmed that drug activity appeared to be occurring from the location. Armed with what they witnessed, had been told, and their own training and experiences, officers formed a reasonable suspicion that drug activity was occurring. When officers witnessed an individual leave the location and enter one of the vehicles they had been told about, the decision was made to effect an investigative stop of the vehicle.

The Magistrate cites the case of Florida v. J.L., 529 U.S. 266 (2000), in which police received a tip that a young black man standing on the sidewalk and wearing a plaid shirt, possessed a concealed gun on his person, to establish the point regarding the necessity of a tip that the tip be reliable in its assertion of illegality. The point made by the Magistrate is well taken, however, this case is differentiated because, though the information supplied by the tip was corroborated (that a black truck, a yellow Caprice and a black Cadillac were at 589 Holcombe Street), what gave rise to the reasonable suspicion was that information, coupled with the activity officers saw taking place immediately outside the residence and the information already known to officers that 589 Holcombe was a distribution point of narcotics.(TR1 - 30.)

The Magistrate Judge has concluded that this set of facts as articulated by the officers is insufficient to meet the inquiry of Terry and its progeny.

The government respectfully objects to the Magistrate Judge's conclusion that these officers lacked reasonable suspicion.

    d.    The Stop of the Vehicle by Mills

The Magistrate Court, during the hearing in this matter, questioned whether, assuming reasonable suspicion existed, such suspicion could be imputed to the officer who

actually made the vehicle stop.

"Reasonable suspicion is determined by the totality of the circumstances and from the collective knowledge of the officers involved in the stop." United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989).

"Reasonable suspicion may exist on the collective knowledge of the police where there is reliable communication between the officer supplying the information and the officer acting on that information." United States v. Allison, 661 F.2d 779,782 (11th Cir. 1980).

In United States v. Cotton, 721 F.2d 350 (1983), the police chief had reasonable suspicion that a vehicle was stolen. The chief observed no other violations of the law. The chief used his radio and instructed an officer to stop the vehicle. An officer did stop the vehicle and the United States Court of Appeals for the Eleventh Circuit affirmed the validity of the stop.

In the present case Drummond testified that he did tell Mills that the car he wanted stopped was possibly carrying drugs, therefore the Court can be satisfied that the officer effecting the stop was properly imbued with reasonable suspicion to effect the stop.(TR1 - 13, 22.)

**IV.    Conclusion**

From the totality of the circumstances and from the collective knowledge of the officers involved, the stop of the black Cadillac was legally permissible. The testimony of the officers establishes that they had a reasonable suspicion supported by articulable facts that suggested that criminal activity might be afoot. For that reason, the government contends that the stop of the defendant was justified. Since the stop of the

defendant was justified the drug evidence located and the resulting statements by the defendant should not be suppressed as consent was given, and never conditioned or withdrawn and Woods made statements after receiving, acknowledging and waiving his rights.

The government respectfully submits that the Recommendations of the Magistrate should be accepted in part and rejected in part and that Woods' <u>Motion to Suppress</u> should be denied.

Respectfully submitted, this the 1st day of August, 2006.

                LEURA GARRETT CANARY
                UNITED STATES ATTORNEY

                /s/ Susan R. Redmond
                SUSAN R. REDMOND
                Assistant United States Attorney
                One Court Square, Suite 201
                Montgomery, Alabama 36104
                Telephone: (334) 223-7280
                Fax: (334) 223-7135
                E-mail: susan.redmond@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | NO 2:05-CR-300-MHT |
| | ) | |
| **LEENANDORA WOODS** | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Susan G. James.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135
E-mail: susan.redmond@usdoj.gov