IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


**UNITED STATES OF AMERICA** )
)
  v. ) CRIMINAL ACTION NO.
) 2:05cr300-MHT
**LEENANDORA WOODS** ) (WO)


OPINION

Leenandora Woods was indicted for distributing and possessing, with intent to distribute, 50 grams or more of cocaine base and a mixture or substance containing a detectable amount of cocaine hydrochloride, in violation of Title 21 U.S.C. § 841(a)(1); and possessing marijuana, in violation of Title 21 U.S.C. § 844. Woods filed two motions to suppress the evidence obtained from a traffic stop, including any statements he made during the stop and his subsequent arrest. The magistrate judge recommends that the suppression motions be granted because the police: (1) made a mistake of law with

respect to Woods's alleged violation of Alabama's vehicle-window tinting law; and (2) lacked a reasonable suspicion that Woods was transporting controlled substances. The government objects to the second basis of the magistrate judge's recommendation, that is, that there was no reasonable suspicion to conduct the traffic stop.

After an independent and de novo review of the record, including conducting a new hearing, the court respectfully rejects the recommendation and holds that the officers had reasonable suspicion to conduct the traffic stop.[1]

---

1.  The court heard evidence from one witness, Corporal R.J. Steelman, who did not testify before the magistrate judge. The court wanted to hear from Corporal Steelman personally as to what he heard from the confidential informant and what he saw when conducting surveillance. This information was presented through the testimony of other witnesses before the magistrate judge and was unclear from the record. The parties had an opportunity to recall all the witnesses who testified before the magistrate judge. The parties agreed that the court could instead consider the transcripts of those witnesses' testimony.

## I. STANDARD OF REVIEW

The court makes a "de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(c). The court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); see also United States v. Raddatz, 447 U.S. 667, 673-84 (1980).

## II. FACTUAL BACKGROUND

On November 1, 2005, a confidential informant provided the following information to Corporal R.J. Steelman of the Montgomery Police Department and Special Agent Neil Thompson of the Drug Enforcement Agency: (1) a large quantity of narcotics were located in and being sold from a residence on Holcombe Street in Montgomery, Alabama; (2) individuals named Preston Grice, "Corey,"

and "Bunky" were at the residence and were involved in the sale of the drugs; and (3) Grice drove a black pickup truck, Corey drove a gold Chevrolet Caprice, and Bunky drove a black Cadillac. The informant did not have firsthand knowledge of this information, but instead learned this information from a friend.

Shortly after receiving this information, Steelman learned that Preston Grice had been convicted of a narcotics offense. He also began surveillance on the residence which he determined was located at 589 Holcombe Street. During his surveillance, Steelman witnessed: (1) the three vehicles, described by the informant, parked outside the residence; (2) a man he recognized as having drug convictions, standing against the wall of the house across the street from the residence, with another male; (3) the other male was walking to and from the residence and was approaching cars on the street that would stop for short periods of time and then drive on; and (4) a man, later identified as Woods, walking down the front

4

steps of the residence, carrying what appeared to be a five- to six-inch plastic bag, enter the black Cadillac parked in the driveway, sit in the car for a minute or two with the brake lights on, and then drive off.

After Woods left, Steelman called for the assistance of fellow police officers to stop him.  Corporal C. Mills stopped the car.  With Woods's consent, Mills searched the car but did not find any drugs.  A canine unit then arrived, the dog alerted on the car, and the dog handler discovered the drugs that Woods now seeks to have suppressed with his motions.

## III. DISCUSSION

The Fourth Amendment to the United States Constitution protects, "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV.  "[P]olice may stop and briefly detain a person to investigate a reasonable suspicion that he is

involved in criminal activity" without violating the Fourth Amendment, Terry v. Ohio, 392 U.S. 1, 30 (1968), that is, they may conduct what we now call a "Terry stop." "Reasonable suspicion" for a Terry stop "is determined from the totality of the circumstances, and from the collective knowledge of the officers involved in the stop." United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989) (internal citation omitted). For reasonable suspicion to exist, the officers must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-418 (1981).

Based on Florida v. J.L., 529 U.S. 266 (2000), the magistrate judge found that reasonable suspicion for a Terry stop was lacking here. In J.L., the police received an anonymous tip that a young black male wearing a plaid shirt standing at a particular bus stop was carrying a gun. 529 U.S. at 268. A few minutes after receiving the tip, police arrived at the bus stop and

6

observed three black males, one of whom was wearing a plaid shirt, "hanging out." Id. at 268. "The officers did not see a firearm, and [the man in the plaid shirt] made no threatening or otherwise unusual movements." Id.

The Supreme Court reiterated that while "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," the tip may be "suitably corroborated" to "exhibit[] sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop." Id. at 270. The Court held that the anonymous tip at issue was not sufficiently reliable because the tipster failed to explain how the information was acquired or why it was trustworthy, id. at 271, and because the tip otherwise failed to "provid[e] ... predictive information and therefore left the police without means to test the informant's knowledge or credibility." Id. Although the tip gave an accurate description of the person carrying the gun, reasonable suspicion "requires that a tip be reliable in its

assertion of illegality, not just in its tendency to identify a determinate person." Id. at 272.

The magistrate judge reasoned that, as in J.L., this court is faced with an unknown and unaccountable source stating that three individuals would be engaging in unlawful drug activity and that source was lacking any predictive information about the manner in which the unlawful drug activity would occur. Also, as in J.L., the magistrate judge continued, while the tip reliably identified the residence and the vehicles parked there, that is, it gave an "accurate description of readily observable" information, it did not reliably identify illegal conduct. Id.

This court disagrees that J.L. controls this case. In United States v. Heard, 367 F.3d 1275, 1279 (11th Cir. 2004), the Eleventh Circuit Court of Appeals distinguished J.L. because the officer had a face-to-face discussion with the anonymous informant and therefore "had an opportunity to judge [her] demeanor and

8

credibility" and "could reasonably conclude that she would have reliable information." There are also numerous unpublished, nonbinding Eleventh Circuit cases finding reasonable suspicion when the police gained information beyond that provided by the anonymous tip. See e.g., United States v. Fields, No. 05-15309, 2006 WL 1117877, at *6 (11th Cir. Apr. 26, 2006) (per curiam) (finding that the defendant's presence "at a house known by officers in the area for high drug activity, a short distance from the intersection described by the informant, and [his] evasive behavior ... are sufficient for a finding of reasonable suspicion"); United States v. Davis, 175 Fed.Appx. 286, 288-289 (11th Cir. Mar. 29, 2006) (per curiam) (distinguishing J.L. because when the police arrived at the scene of a suspected burglary, within minutes of a 911 call, the suspect's car was the only one parked in front of the burgled trailer, and the passenger fit the racial description given by a witness who observed the suspect crawling through the window of

the trailer, and the driver of the car told the police he had just picked up the passenger); <u>United States v. Benitez-Macedo</u>, 129 Fed. Appx. 506, 511 (11th Cir. 2005) (per curiam) (finding that "the fact that the vehicle matched the description given in the call [over the police radio about shots fired] ...; the vehicle was spotted at 2:00 a.m. less than a mile from the scene where the shots were fired and within minutes of the 'shots fired' report; and the vehicle remained stopped at the intersection, across the stop bar, while the traffic lights cycled twice from green to red--was sufficiently 'specific and articulable' to justify the stop").

In <u>United States v. Reese</u>, 108 F. Supp. 2d 1338, 1343 (M.D. Ala. 2000) (Thompson, J.), this court distinguished <u>J.L.</u> because, when the anonymous informant spoke with the police about the location of an individual with an outstanding arrest warrant, the police already had a good deal of information about the whereabouts of that person.

These cases teach that <u>J.L.</u> is binding when the

police rely on an anonymous tip alone, but is distinguishable when the police have other information, beyond that provided by the unknown source, that sufficiently corroborates the tip and thus provides reasonable suspicion.

The question for the court, therefore, is whether the anonymous tip coupled with that other information created a reasonable suspicion that Woods was involved in illegal drug activity.  The government asserts that when the police stopped Woods they collectively had the following information before them: (1) three individuals were storing and distributing large amounts of cocaine; (2) from a residence, later identified, as 589 Holcombe Street; (3) the three individuals drove a black truck, a gold Caprice and a black Cadillac, respectively; (4) one of those individuals had a prior conviction for a narcotics offense; (5)  all three described vehicles were parked at 589 Holcombe Street; (6) a known drug dealer was standing across the street from the residence with

another male; (7) the other male was walking from the direction of the residence and back, and stopping approaching cars, which, in the officers' experience, was consistent with drug activity; (8) a lone male, carrying what appeared to be a plastic bag, left 589 Holcombe Street, entered the black Cadillac and, after a few minutes, left the area; and (9) 589 Holcombe Street was known as a point of distribution for narcotics.

The first three pieces of information provided by the anonymous informant are insufficient to establish reasonable suspicion under J.L.; the tipster did not reveal how this information was acquired, why it was trustworthy, or provide any predictive information. However, the remaining information sufficiently corroborates the tip's reliability and establishes reasonable suspicion to effectuate a traffic stop on Woods. While the court takes issue with the government's characterization of 589 Holcombre Street as a location known for drug distribution because it reads the

testimony to be that the house across the street was the one known for drug distribution, the officers' observation of a man walking to and from a known drug house toward 589 Holcombe Street and that man's stopping of cars on the street in between the two homes--conduct which is quite consistent with drug activity--in conjuction with the officers' prior knowledge that drugs were being sold in the Holcombe street area, is sufficient to establish reasonable suspicion on the part of the officers that drugs were in fact being stored and distributed from 589 Holcombe Street as stated by the anonymous informant.

This leaves the court with the critical, and in the court's opinion, much closer question, of whether the officers had a reasonable suspicion that Woods was himself involved in this suspected drug activity. Certainly, Woods's "presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that [he]

13

is committing a crime." <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124 (2000). Further, when the court analyzes what Woods actually did, that is, walk from the residence, possibly with a bag in his hand, sit in his car for a few minutes with the brake lights on and then drive down the street, it cannot be denied that each of these activities in-and-of itself is innocuous.

The problem for Woods, of course, is that these activities cannot be analyzed discretely. When these acts are viewed collectively and in light of the totality of circumstances, reasonable suspicion arises. The totality of circumstances are that shortly after an anonymous tip was provided about illegal drug activity at a residence, which was located in an area with a reputation for such drug activity, officers observed behavior consistent with drug activity at the residence, and officers observed Woods leaving the front steps of the residence, possibly carrying a bag, and entering a car that fit the description given by the anonymous

source as a vehicle driven by someone distributing drugs from the residence.  Based on all these circumstances, the court finds that it is presented with a situation where the officers had a reasonable suspicion that Woods was engaged in wrongdoing.  See e.g., United States v. Fields, No. 05-15309, 2006 WL 1117877, at *6 (11th Cir. Apr. 26, 2006) (per curiam) (finding that the defendant's presence "at a house known by officers in the area for high drug activity, a short distance from the intersection described by the informant, and [his] evasive behavior ... are sufficient for a finding of reasonable suspicion").

The magistrate judge, in support of her recommendation, notes that there was much information the police did not know: They did not know, she notes, "who was actually in the house and could not see who may have been going into or coming out of the house," Recommendation (Doc. No. 43), at 20-21; "whether any of the persons named by the unknown source, including Grice,

the one individual who the police knew may have had a drug-related criminal record, was actually in the house," id. at 21; "who owned the vehicles, drove the vehicles or rode in the vehicles matching the general description provided by the unknown source and parked outside the subject residence," id.; "any identifying physical characteristics of any of the persons named by the unknown source," id.; "anything about how the alleged drugs were being distributed from the house," id.; and "who it was that entered the Cadillac or where he might have been going." Id.

The magistrate judge overlooks, however, that reasonable suspicion "can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990). The purpose of a Terry stop is not to arrest someone because you think they committed a crime, which conduct requires probable cause and thus a reasonably full picture; rather the purpose is to investigate further, it is an

investigative stop to fill in gaps about what the police do not know. That the police do not have the full picture is self-evident in a Terry stop, for the purpose of the stop is to get a fuller picture. To list what the police do not know is to note the obvious.

## IV. CONCLUSION

For these reasons, the court will adopt the magistrate judge's recommended holding that the police did not make a reasonable stop based on an alleged violation of Alabama's vehicle-window tinting law and will reject the magistrate judge's recommended holding that the police lacked reasonable suspicion to conduct a Terry stop. The court will deny Woods's motions for suppression.

An appropriate order will be entered.

DONE, this the 10th day of August, 2006.

　　　　　　　　　　　　　　/s/ Myron H. Thompson
　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE