IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:05cr300-MHT |
| **LEENANDORA WOODS** | ) | (WO) |

SUPPLEMENTAL OPINION AND ORDER

Defendant Leenandora Woods filed motions to suppress the evidence obtained from an investigative stop.  The magistrate judge recommended that the suppression motions be granted because the police: (1) made a mistake of law with respect to Woods's alleged violation of Alabama's vehicle-window tinting law; and (2) lacked a reasonable suspicion that Woods was transporting controlled substances.  After the government objected to the second basis of the magistrate judge's recommendation, and after holding a new hearing, this court adopted the recommendation as to the conclusion that the police did not make a reasonable stop based on an alleged violation

of Alabama's vehicle-window tinting law and rejected the recommendation as to the conclusion that the police lacked a reasonable suspicion to conduct a stop pursuant to <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968), with the result that, absent another ground for suppression, the evidence comes in.  <u>United States v. Woods</u>, ___ F.Supp.2d ___ (M.D. Ala. August 10, 2006).

This court further ordered Woods to notify the court in writing if he wished to pursue other issues, not related to the initial lawfulness of the stop, that were raised in his suppression motions but were not addressed by the magistrate judge.  Woods chose to pursue his challenges to (1) the duration of the <u>Terry</u> stop and (2) the scope of the admittedly consensual search of his vehicle.  The court concludes that neither the duration of the stop nor the scope of the search violated the Fourth Amendment.

## I. FACTUAL BACKGROUND

On November 1, 2005, Corporal R.J. Steelman conducted surveillance on a residence located at 589 Holcombe Street, Montgomery, Alabama, in response to information he received from a confidential informant. During his surveillance, Steelman observed activity (including a man, later identified as Woods, walking down the front steps of the residence, carrying what appeared to be a five- to six-inch plastic bag, enter a black Cadillac parked in the driveway, sit in the car for a minute or two with the brake lights on, and then drive off) that caused him reasonably to suspect that Woods was involved in drug activity at the residence. Based on this suspicion, Corporal Steelman called for assistance from Corporal C. Mills, who stopped Woods shortly after he had left the Holcombe residence.

A videotape of the investigative stop reveals the following: Corporal Mills asked Woods to exit the Cadillac; he then searched Woods but found no contraband.

Mills then asked Woods for his identification and initiated a check for outstanding warrants. While waiting for the records check, Mills asked Woods if there was anything in the car he should be "concerned about"; Woods said "no" and appeared to consent to a search of the car. Mills confirmed Woods's consent by asking, "So, you don't mind if I search it?", and Woods again said "no."

Mills began by opening the doors on both sides of the car and searching inside; he then opened the trunk and searched it. While Mills did this, and after approximately ten minutes into the stop, a canine unit arrived; the dog handler spoke for a few minutes to Woods. Mills completed his search of the trunk, but left it open. The dog handler then retrieved the dog, which wondered into a nearby bush before jumping into the open trunk. It appears that the dog did not alert in the trunk.

The dog was then lead into the car itself. While the dog handler was examining the front seat of the car, Woods attempted to flee the scene. Woods was tasered, handcuffed, and brought back to the scene. The dog handler returned to the front section of the car where he found the drugs at issue hidden in the center console. It is unclear from the videotape but it appears that the dog alerted while in the front seat of the car.

The drugs were found within 18 minutes of the inception of the stop. Shortly after the drugs were found, Mills received the results of the warrant check.

Woods asks that this court suppress the drugs and any other evidence resulting from the discovery of the drugs, because the duration of the stop exceeded what was necessary to complete its purpose and because the search exceeded the scope to which he consented.

## II. DISCUSSION

In Terry v. Ohio, the Supreme Court upheld the stop and subsequent frisk of an individual based on an officer's reasonable suspicion of illegal conduct. 392 U.S. at 27-28. In this situation, according to the Court, "the officer's action [must be] justified at its inception," id. at 20, and must be "reasonably related in scope to the circumstances which justified the interference in the first place." Id. The limitation on "scope" is not confined to the duration of the seizure; it also encompasses the manner in which the seizure is conducted. See, e.g., Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty., 542 U.S. 177, 188 (2004).

The court having found that the stop at issue satisfied Terry's requirement of reasonable suspicion, it must now also determine whether the stop satisfied Terry's other requirements of reasonable duration and scope.

## A. Duration

"[A]n officer's investigation of a traffic stop must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003). The traffic stop must be of "limited duration," id., and "must be limited to the time necessary to effectuate the purpose of the stop." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). Based on the videotape, the court finds that the dog arrived approximately ten minutes after the traffic stop began, and the drugs were uncovered about eight minutes later.

To be sure, the Eleventh Circuit Court of Appeals has upheld reasonable-suspicion detentions significantly longer than this one. See, e.g., United States v. Gil, 204 F.3d 1347, 1350-51 (11th Cir. 2000) (upholding reasonable-suspicion detention for approximately 75 minutes); United States v. Cooper, 873 F.2d 269, 275 (11th Cir. 1989) (affirming a 35-minute reasonable-

suspicion detention); <u>United States v. Hardy</u>, 855 F.2d 753, 761 (11th Cir. 1988) (affirming reasonable-suspicion stop lasting almost 50 minutes).

Yet, this court is reluctant to adopt a completely formulaic approach to whether the duration of a stop is reasonable, such that, for example, a 75-minute detention is always reasonable, simply because a court found it was reasonable in other circumstances, or that an 76-minute detention is not, simply because a court found it was not reasonable in other circumstances.  Instead the court will look to the totality of circumstances to ensure that the amount of time Woods was detained was necessary to effectuate the reasonable purposes of the stop.

Here, it took the entire duration of the stop for Corporal Mills to obtain the warrant-check information. Because it appears from the videotape and courtroom testimony that the duration of the stop fell well within the time-period found to be reasonable in this circuit and because, more importantly, the duration of the stop

was entirely justified by "the ordinary inquiries incident to such a stop," Illinois v. Caballes, 543 U.S. 405, 408 (2005), the court rejects Woods's challenge to the duration of his stop.

### B. Scope

Woods argues that Mills and the other officers exceeded the scope of his consent. The scope of a consensual search is determined by the terms of the actual consent given. United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir. 1992). However, when, as here, "an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass." United States v. Strickland, 902 F.2d 937, 941 (11th Cir. 1990). A general consent to search for specific items is reasonable if it is limited to any compartment or

container that might reasonably contain those items. United States v. Zapata, 180 F.3d 1237, 1243 (11th Cir. 1999). A search that forces open a secured compartment that reasonably may contain the objects of the search remains within the bounds of a general consent to search, Martinez, 949 F.2d at 1121; however, a search that destroys a vehicle, its parts, or its contents exceeds the scope of the consent provided. Strickland, 902 F.2d at 941-42.

Woods does not contend that the search included areas not reasonably likely to contain the objects of the search or that the search resulted in any destruction of his vehicle. Rather, he contends that his general consent to Mills to search his car cannot be reasonably interpreted to include a further search by a canine unit.

There is no consent required for a well-trained narcotics-detection dog to sniff the exterior of a vehicle incident to a valid stop. An exterior sniff is not considered a search because, as the Supreme Court has

10

stated, it "does not expose noncontraband items that otherwise would remain hidden from public view." Illinois v. Caballes, 543 U.S. 405, 409 (2005). "[T]he possession of contraband 'compromises no legitimate privacy interest.' This is because the expectation 'that certain facts will not come to the attention of the authorities' is not the same as an interest in 'privacy that society is prepared to consider reasonable.'" Id. at 408-409.

However, here, the dog did not walk around the exterior of the car. Instead, the dog immediately jumped into the trunk and then was taken into the interior of the vehicle. This activity is distinguishable from Caballes in that it exposed contraband and noncontraband items alike. Because the interior dog sniff is capable of revealing information beyond the location of contraband materials, it is a search.

The court must therefore determine if the officers reasonably believed that Woods's consent to the search

11

included the canine search of the interior of his car. First, when the dog-handler arrived, shortly after Woods gave his search consent, the handler spent some time talking to Woods. Therefore, before the canine search began, Woods had been fully aware for some time of the dog's presence and its purpose; that a canine search ensued as part of Wood's consent came as no surprise to anyone present.

Second, Woods "did not specifically limit the area that [the officers] could search." United States v. Harris, 928 F.2d 1113, 1117-1118 (11th Cir. 1991). More importantly, Woods himself spoke to the dog-handler after the dog arrived and before it sniffed the interior of the car, and thus "had ample opportunity to limit the scope of the search, or request that it be discontinued." Id. Moreover, it is apparent from the videotape that Woods must have known "the officers w[ere] looking for drugs; therefore, both [Woods] and the officer[s] would reasonably interpret the consent as constituting consent

12

to search in places where narcotics would reasonably be hidden," id., and that the consent would include a dog-sniff in those places as well.

Looking at the totality of the circumstances, in particular as they are displayed on the videotape of the stop and search, the court holds that the officers then present reasonably concluded that Woods's consent included the canine search of the interior of his car.

Accordingly, it is ORDERED that defendant Leenandora Woods's motions to suppress (Doc. Nos. 20 & 26) are denied in all remaining aspects, that is, to extent he challenges (1) the duration of the investigative stop and (2) the scope of the admittedly consensual search of his vehicle.

DONE, this the 14th day of August, 2006.

                                    /s/ Myron H. Thompson
                              **UNITED STATES DISTRICT JUDGE**